AF Approval __HG__   Chief Approval __LL__

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:15-cr-485-T-35EAJ

ALFRED SCHAFFER

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, Alfred Schaffer, and the attorneys for the defendant, Anthony Arena and Robert Herce, mutually agree as follows:

**A.   Particularized Terms**

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with mail fraud, in violation of 18 U.S.C. § 1341.

2.   Maximum Penalties

Count One carries a maximum sentence of twenty (20) years imprisonment, a fine of $374,568.40 (that is, twice the gross gain or loss or $250,000, whichever is greater), a term of supervised release of not more than three (3) years, and a special assessment of $100 per felony count for individuals, and $400 per felony count for persons other than individuals, such as

Defendant's Initials ___

corporations. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which the defendant has been charged and to which the defendant is pleading guilty. The elements of Count One are:

<u>First</u>: the Defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false or fraudulent pretenses, representations, or promises;

<u>Second</u>: the false or fraudulent pretenses, representations, or promises were about a material fact;

<u>Third</u>: the Defendant intended to defraud someone; and

<u>Fourth</u>: the Defendant used the United States Postal Service by mailing or by causing to be mailed something meant to help carry out the scheme to defraud.

4. <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States

2

Defendant's Initials 

Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to Hope Children's Home in the amount of at least $187,284.20.

7. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of

3

Defendant's Initials 

responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    8.    <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, a money judgment in the amount of $187,284.20, representing the amount of proceeds obtained as a result of the offense charged in Count One. The defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that promptly

4

Defendant's Initials 

after accepting this Plea Agreement, the Court make a determination that the government has established the amount of the proceeds of the offense(s) to which defendant is pleading guilty is $187,284.20 and enter an order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment. The Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

5

Defendant's Initials 

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

**B.     Standard Terms and Conditions**

    1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to,

6

Defendant's Initials 

garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the

7

Defendant's Initials 

background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial

8

Defendant's Initials 

affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not

9

Defendant's Initials 

such decision is consistent with the government's recommendations contained herein.

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

10

Defendant's Initials 

9. **Filing of Agreement**

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if

Defendant's Initials 

11

defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

From at least as early as January 2007 and continuing through October 2011, Alfred Schaffer, a Captain in the City of Tampa Fire Department, worked for Hope Children's Home on a part-time basis, including serving, at various times, as the business manager and was named its chief financial officer. During that time period and through a scheme to defraud, Schaffer embezzled at least $187,284.20 from Hope Children's Home.

Defendant's Initials _____

12

Hope Children's Home was a Tampa-based ministry established by Schaffer's father. It cared for abandoned, abused, and neglected children. Hope Children's Home was a tax-exempt ministry that depended on private donations from individuals and entities across the country to fund its operations. It had an affiliated entity, Children's Home in Honduras, and operated two thrift stores, one in Tampa and one in Clearwater.

In his capacity as the business manager and chief financial officer, Schaffer was, assisted by others, responsible for all the accounting, including accounts payable, accounts receivable, account statements, and financial reports provided to the Board. Schaffer was, assisted by others, also responsible for receiving funds, making the deposits, withdrawing funds, and writing checks. Schaffer was responsible for Hope Children's Home's bank account at Heritage Bank.

Schaffer was paid $500 on a biweekly basis. From around the beginning of 2007 until Schaffer's departure from Hope Children's Home in October 2011, Schaffer's salary was paid via a direct deposit into Schaffer's personal Suncoast Schools Federal Credit Union account.

In 2011, R.H. began to question some of Schaffer's accounting practices. Based on records reviewed, he believed that Schaffer had been embezzling money from Hope Children's Home. On October 9, 2011, R.S., an out of state board member, flew to Florida and met with Schaffer to discuss the allegations.

13

Defendant's Initials 

During the meeting, Schaffer broke down [ASA] emotionally and admitted to R.S. that he had been embezzling funds.

Schaffer told R.S. that it started when Hope Children's Home switched to a payroll processing system. At that time, Schaffer continued to pay himself $500 biweekly on top of the automatically remitted $500, thereby doubling his salary by embezzling the extra $500. Schaffer told R.S. that the embezzlement grew from there. Later, Schaffer also admitted what he had done to M.H. Schaffer then wrote a resignation letter.

Instead of reporting the crime immediately to law enforcement, Hope Children's Home hoped to arrange for repayment of the stolen money from Schaffer, and the Board members prayed and debated what to do about the scheme. Hope Children's Home ultimately did not recover the stolen funds from Schaffer. In the summer of 2015, Hope Children's Home was contacted by federal law enforcement. Records were provided to law enforcement, who were able to ascertain how the scheme unfolded.

Much of the embezzlement occurred when Schaffer wrote checks, directed to his own benefit rather than to the benefit of the children or the ministry. The checks that were written by Schaffer as part of the scheme to defraud Hope Children's Home were generally and fraudulently stamped with the signature of another board member, whose signature stamp Schaffer had as business manager and chief financial officer. Then Schaffer would falsely and fraudulently mask the entity to whom the check was made payable in Hope

14

Defendant's Initials ___

Children's Home's accounting software, thereby hiding the material information from the board members. Each month, Schaffer would mail or cause to be mailed financial statements to the board members. The monthly statements would reflect the modifications to the checks made by Schaffer that masked the real entities to whom the checks were paid.

The scheme to defraud included seventeen (17) checks (total: $13,367.70) written on Hope Children's Home's bank account to pay Schaffer's personal credit card at Citibank; fifty-five (55) checks written to Schaffer personally (total: $46,665.50); thirty (30) checks written to pay Schaffer's personal American Express card (total: $128,251.70). These checks included Schaffer's payment to himself of the double salary. Combined, the federal investigation determined (and Schaffer hereby admits) that he embezzled at least $187,284.20, which is the amount the United States can prove beyond a reasonable doubt.

The checks paid to Schaffer's personal American Express account appear to have been mailed by U.S. Mail from Schaffer's home in Land O'Lakes, Florida, to American Express's processing center. This included a check mailed to American Express on or about September 10, 2011, in execution of the scheme.

12. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and

15

Defendant's Initials 

no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _____ day of October, 2015.

A. LEE BENTLEY, III
United States Attorney

_____
Alfred Schaffer
Defendant

_____
Thomas N. Palermo
Assistant United States Attorney

_____
Anthony Arena, Esquire
Attorney for Defendant

_____
Megan K. Kistler
Assistant United States Attorney

_____
Robert Herce, Esquire
Attorney for Defendant

_____
Robert A. Mosakowski
Assistant United States Attorney
Chief, Economic Crimes Section